Michael S. Devorkin, Esq.
Marc D. Rosenberg, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300

*Attorneys for Petitioners*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

In re:                                              :

                                                                    Chapter 15

SOVEREIGN ASSETS LTD.,                    :

                                                                    Case No. 14-

         Debtor in Foreign Proceeding.       :

-------------------------------------------------- x

### VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING

Adv. Guy Gissin and Adv. Rami Kogan, solely in their capacity as Special Administrators ("**Petitioners**" [1] or the "**SAL Administrators**") of Sovereign Assets Ltd. ("**SAL**" or the "**Debtor**"), appointed by the Israel District Court of Tel Aviv-Jaffa, and as duly authorized foreign representatives as defined by section 101(24) of title 11 of the United States Code (the "**Bankruptcy Code**"), by and through their undersigned United States counsel, respectfully submit this Petition, verified by the Declarations of Adv. Guy Gissin and Adv. Rami Kogan, filed herewith, seeking recognition of a foreign main proceeding and themselves as authorized foreign representatives, and granting such further relief as may be appropriate.

Attached hereto as exhibits are (i) the Proposed Order Granting Recognition, Exhibit 1; (ii) the Proposed Order Scheduling a Hearing on, and Specifying the Form and Manner of

---

[1] Capitalized terms used but not defined in this section have the meanings ascribed to such terms below.

Service for, the Chapter 15 Petition, <u>Exhibit 2</u>; and (iii) the Proposed Notice of Hearing for the Recognition of Foreign Main Proceeding, <u>Exhibit 3</u>.    In support thereof, Petitioners respectfully state as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.        On July 7, 2014, the District Court, Tel Aviv-Jaffa, Israel, issued an order in Case No. 31623-03-14 (the "**<u>SAL Liquidation Proceeding</u>**"), appointing Petitioners Adv. Guy Gissin and Adv. Rami Kogan as SAL Administrators for the purpose of liquidating SAL, pursuant to the Israeli Companies Law 5759-1999 (New Version), and the Israeli Companies Ordinance (Consolidated Version) 5743-1983.    A certified copy of the Order entered by the District Court Tel Aviv-Jaffa with respect to SAL (the "**<u>SAL   Liquidation Order</u>**") is attached hereto as <u>Exhibit 4</u> and incorporated herein by reference.    A sworn translation of the SAL Liquidation Order into English is attached hereto as <u>Exhibit 5</u> and is incorporated herein by reference.    The SAL Liquidation Order included a Dissolution Order for SAL, which is sometimes referred to as a "winding up order."

2.        The Petitioners, as foreign representatives of SAL, seek recognition of the SAL Liquidation Proceeding that is currently pending in Israel.    Petitioners seek recognition of, and relief respecting, a foreign main proceeding, as defined in section 1502(4) of the Bankruptcy Code, given that the foreign proceeding respecting the Debtor is pending in Israel, the center of the Debtor's main interests.    In the event the Court determines that the SAL Liquidation Proceeding is not a foreign main proceeding, in the alternative, Petitioners request the Court to recognize the SAL Liquidation Proceeding as a foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code, because, at minimum, the Debtor has an establishment in Israel (as defined in section 1502(2) of the Bankruptcy

2

Code).

3.     As set forth below, the SAL Liquidation Order and other documents filed contemporaneously herewith in support of the Petition show that (i) the Debtor was organized and operated in Israel and the SAL Liquidation Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code; and (ii) Petitioners are the "foreign representatives," within the meaning of section 101(24) of the Bankruptcy Code, authorized among other things, to administer the liquidation of the Debtor's assets, which as used herein, includes all subsidiary entities ("**Debtor's Assets**" or "**SAL's Assets**"), and to act as representatives of the SAL Liquidation Proceeding.

4.     In connection with marshaling Debtor's Assets and administering the SAL Liquidation Proceeding, the SAL Administrators seek to investigate the status and disposition of the Debtor's Assets in the United States and pursue recovery thereof, which to date has been impeded by the obstructive actions of one or more individuals with control of the Debtor's assets in the United States.  Petitioners request that the Court (i) recognize the SAL Liquidation Proceeding as a foreign main proceeding, or, in the alternative, as a foreign nonmain proceeding; (ii) recognize the Petitioners as the "foreign representatives" of SAL within the meaning of section 101(24) of the Bankruptcy Code; (iii) grant discovery relief to assist the SAL Liquidators in connection with administration of the SAL Liquidation Proceeding; and (iv) grant temporary, preliminary, and permanent injunctive relief to protect Debtor's Assets in the United States.

## <u>JURISDICTION AND VENUE</u>

5.     This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the

Southern District of New York (C.J. Preska), dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

6.      The Debtor's Assets in the United States are personal property consisting of ownership interests in United States entities organized in one or more states. *See* section 109 of the Bankruptcy Code. The Debtor's subsidiaries, SOVA Merritt LLC ("**SOVA Merritt**") and SOVA Management LLC ("**SOVA Management**"), however, are currently parties in two different state court cases within the Southern District of New York: *Tawil v. Spitzer*, No. 652720/2011, (Sup.Ct. N.Y. Cnty.) and *SOVA Merritt v. Poznanski and Wells Fargo,* No. 650917/2012, (Sup.Ct. N.Y. Cnty.).

7.      Venue is properly located in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested include sections 105(a), 1507, 1517, 1520 and 1521 of the Bankruptcy Code.

## STATEMENT OF FACTS

### A.    SAL and the U.S. Entities

#### 1.      The Entities

8.      On September 10, 1992, SAL was formed and organized under the laws of Israel and registered with the Registrar of Companies under a predecessor name (Lavlav Holdings Ltd.). On January 20, 2007, the name was changed to Sovereign Assets Ltd. At all times relevant hereto, SAL was a public company operating under the laws of Israel, registered with the Tel Aviv Stock Exchange, with its registered offices in Israel, first at Hayetzira Street, Ramat Gan, Israel, and most recently at Zecharia 13, Bnei-Brak, 5154022 Israel.

9.      At all times relevant hereto, SAL was an Israeli based, real estate investment firm, whose primary business was (i) to invest in real estate in the United States using other entities in

the United States that it owned in whole or part (the "**U.S. Entities**"); and (ii) from May 21, 2007, forward, to use a prospectus issued in Israel to raise money for this purpose by issuing bonds for sale exclusively in Israel.   The U.S. Entities and their known relationships are identified on Exhibit 6 hereto, which is incorporated herein by reference.   In the operation of its business, SAL also relied on employees and advisors in the United States and in Israel.   The board of directors and the accounting/bookkeeping function operated in Israel.

10.     Beginning in 2007, Abraham Poznanski ("**Poznanski**"), an individual currently residing in New York, gained control of a majority of the shares of SAL, and became the Chief Executive Officer of SAL and its largest shareholder.   Upon information and belief, Poznanski had control of 90% of the shares of Sovereign Assets LLC, which controlled 70% of the shares of SAL.

11.     As a Director of SAL, Poznanski signed SAL's Quarterly and Annual Reports and verified the completeness and accuracy of the financial documents and information contained therein, including but not limited to the information related to the U.S. Entities.

12.     SAL's Annual Report through December 31, 2010 and dated March 31, 2011 ("**2010 Annual Report**"), was signed by Poznanski.   The 2010 Annual Report stated SAL was the owner of SOVA Merritt and SOVA Management.   Furthermore, the 2010 Annual Report included (i) an organizational flow chart, showing SOVA Management and SOVA Merritt were 100% owned by SOVA Holdings, which was 100% owned by SAL; and (ii) a chart of SAL's subsidiaries showing SAL had 100% ownership in SOVA Holdings, Inc., SOVA Management, SOVA Merritt Holdings LLC, and SOVA Merritt.

13.     On May 21, 2007, SAL issued a Prospectus (the "**Prospectus**") in Israel to raise NIS 50 million by selling bonds (the "**Bonds**") exclusively in Israel in order to buy

assets in the United States.  In connection therewith, on May 16, 2007, SAL entered into a Trust Deed with Aurora Fidelity Trust Co. ("**Aurora**" or "**Trustee**") pursuant to which Aurora was appointed Indenture Trustee for the bondholders.

14.    The Prospectus stated that the funds raised through the Bonds would be used to invest in real estate in the U.S., including in Milford, Connecticut and Nashville, Tennessee.

15.    After issuing the Prospectus, SAL sold Bonds exclusively in Israel and raised NIS 50 million.  At that time, the dollar ($) - shekel (NIS) exchange rate was approximately four (4) shekels per one (1) dollar.

16.    After raising the NIS 50 million, SAL used these funds, together with the assumption of certain property level indebtedness, to acquire, through one or more of the U.S. Entities, 100% or lesser interests in real property in office buildings located at 440 Wheeler Farm Road, Milford, CT ("**Connecticut Property**"), and 401 Church Street, Nashville, Tennessee, known as L & C Tower ("**Nashville Property**") (collectively, the ("**U.S. Properties**").

17.    From at least 2008 forward, Poznanski had control of, and operated, SAL and its U.S. Entities, and was an insider of SAL and its U.S. Entities, to which he owed fiduciary duties.

18.    As of the date of this Petition, SAL's shareholders include A.A. Marketing (27.77%); Edwin Cohen (8.74%), SOVA LLC (7.6%), and various other public shareholders.

**2.**    **The Connecticut Property**

19.    On or about July 27, 2007, SOVA Merritt, a subsidiary of SAL, purchased the Connecticut Property from Merritt Acquisition LLC for $27.1 million.  SOVA Merritt financed the purchase using approximately $10.7 million in cash raised from the bond offering and the

6

assumption of an existing mortgage of $16 million with Wells Fargo Bank.  The Connecticut Property consists of an 11.86-acre parcel of land that includes a Class "A" office building, which is commonly known as Merritt Crossing.

20.    On or about October 11, 2007, SOVA Merritt refinanced the Wells Fargo mortgage with Nomura Credit & Capital, Inc. ("**Nomura**"), in the original principal amount of $21,300,000.  Poznanski personally guaranteed the mortgage on the Connecticut Property.  On or about May 21, 2009, Nomura assigned the mortgage to Wells Fargo, N.A., as Trustee for Morgan Stanley Capital I Inc.  The mortgage was further assigned, on or about July 6, 2009, to Bank of America, N.A., as Trustee for Morgan Stanley Capital I Inc.  Thereafter, U.S. Bank, N.A. became the successor Trustee of the mortgage.

21.    Initially, the Connecticut Property generated revenue through rental payments, and the net proceeds were deposited into an account at Bank Leumi New York, and used to pay operating expenses of SAL.

22.    Beginning no later than May, 2011, Poznanski oversaw the management of the Connecticut Property.

23.    On October 23, 2014, at the request of Poznanski, SAL Administrator Guy Gissin met with Poznanski and his counsel, and Poznanski informed SAL Administrator Gissin that the mortgage on the Connecticut Property was in default since at least June, 2014, and now under the control of a special servicer, Torchlight Loan Services LLC ("**Torchlight**").  Counsel for the SAL Administrators has requested Torchlight to provide documents and information relating to the status of the Connecticut Property.

**3.**    **The Nashville Property**

24.    On or about May 3, 2005, 401 Church Street, LLC, was incorporated in Tennessee

for the purposes of acquiring an office building in Nashville, Tennessee.

25.    On or about June 23, 2005, 401 Church Street, LLC purchased the Nashville Property from LC Tower, LLC, using $4.2 million in cash raised from the bond offering and $17.8 million obtained from a loan from CIBC, Inc. secured by a mortgage on the Nashville Property (the "**CIBC Mortgage**").

26.    On or about August 7, 2008, SOVA Management became the owner of 66% of 401 Church Street, LLC.  This acquisition resulted when Nashville Properties, LLC, owner of shares in 401 Church Street, LLC, failed to repay SOVA Management a $3 million loan, which Nashville Properties LLC had borrowed from SOVA Management on or about October 18, 2007.  SOVA Management used funds in SAL's Bank Leumi Account in New York to fund this loan.  By agreement between SOVA Management, LLC and Nashville Properties, LLC, dated August 7, 2008, the parties converted this loan to give SOVA Management ownership of 66% of 401 Church Street, LLC.

27.    The 2010 Annual Report, signed by Poznanski reported this transaction between SOVA Management and Nashville Properties LLC.  It states that (i) in October, 2007, SOVA Management, a subsidiary of SAL, loaned $3 million to Nashville Properties LLC for 6 months and the loan was secured by Nashville Properties LLC's interests in 401 Church Street LLC; and (ii) when Nashville Properties LLC failed to repay the loan, Nashville Properties LLC's 49% interest in 401 Church Street LLC was transferred to SOVA Management.

28.    In 2011, Poznanski signed SAL's Third Quarter Report, dated December 1, 2011 ("**Quarterly Report 2011**").  In the Director's Report annexed to the Quarterly Report 2011, SAL and Poznanski again confirmed SAL's organizational structure that "SOVA Management

8

LLC, a wholly owned subsidiary, made a loan to Nashville Properties LLC" and that loan was later exchanged for control of Nashville Properties LLC's interest in 401 Church Street LLC."

29.    Similarly, the 2011 Annual Report signed by Poznanski, confirmed SAL's ownership of SOVA Management and that SOVA Management acquired this same interest in 401 Church Street LLC.

30.    Upon information and belief, based on information from 401 Church Street, LLC provided to a representative of the SAL Administrators, in 2012, because of questions put by bondholders of SAL to 401 Church Street, LLC, the manager of 401 Church Street, LLC withheld from SOVA Management distribution payments due to it as a member of 401 Church Street, LLC, but thereafter, the manager disbursed the distribution payments and the withheld amounts as Poznanski directed.    The SAL Administrators have not received an accounting of these distributions and do not know whether they were paid to SOVA Management, as they should have been, or whether Poznanski retained or directed them for his own benefit.    Poznanski has refused to provide to the SAL Administrators any information about this.

31.    In 2013, the Nashville Property and 401 Church Street, LLC encountered financial difficulties when a major tenant terminated its lease for 65% of the Nashville Property and vacated its space.    As a result, the revenues of 401 Church Street, LLC drastically decreased, and it was unable to meet its payment obligations on the CIBC Mortgage.

32.    Upon information and belief, as a result of these financial difficulties, on or about July 7, 2014, without the knowledge or consent of the SAL Administrators or the District Court, Tel Aviv, Poznanski arranged and participated in a restructuring of the ownership of 401 Church Street, LLC and refinancing of the CIBC Mortgage, which, among other things, transferred some of SOVA Management's interest in 401 Church Street, LLC.

9

33.    Upon information and belief, Shelbourne Global Solutions LLC ("**Shelbourne Global**") (organized in New York) obtained approximately $15,950,000 in new financing from UC Funding, a/k/a UC Funds, secured by a mortgage on the Nashville Property in favor of UCF I Trust 1.  From this money, Shelbourne Global used approximately $12.6 million to pay off the CIBC Mortgage and $3.35 million to recapitalize 401 Church Street, LLC.  UC Funding, a/k/a UC Funds is holding this $3.35 in escrow for its use by 401 Church Street, LLC to upgrade the Nashville Property.

34.    Upon information and belief, as a result of this refinancing and recapitalization, Shelbourne Global TN LLC ("**Shelbourne Global TN**") (organized in New York), a subsidiary of Shelbourne Global Solutions LLC, now owns 50% of 401 Church Street, LLC either directly or through another subsidiary.  The other owners of 401 Church Street, LLC now are SOVA Management LLC (32%); SOVA Management LLC (17%)(either acquired from, or through control of, Nashville Properties, LLC), and Armand Lasky (either directly or through an entity with which he is affiliated) (1%).

35.    In addition, as a result of the refinancing and recapitalization, the new manager of 401 Church Street, LLC is Nashville Management, LLC, which is owned by Shelbourne Global TN (50%) and Poznanski or a company owned or controlled by Poznanski (Prodigy Management Group LLC).

**4.    Poznanski's Alleged Transfer of SAL's Ownership of SOVA Management and SOVA Merritt**

36.    At the October 23, 2014 meeting, with SAL Administrator Guy Gissin, Poznanski admitted that he was involved in effecting the restructuring of SOVA Management's interests in 401 Church Street, LLC, described above, and claimed that in July 2013 he transferred ownership of SOVA Merritt LLC and SOVA Management LLC from SOVA Holdings Inc.

2152450.2

(wholly owned by SAL) to SOVA Assets LLC (an entity under his control).

37.     Poznanski further asserted at that time that he caused and approved this alleged transaction acting on behalf of SOVA Holdings Inc. (i) as a director of SOVA Holdings Inc., and (ii) because he allegedly had the right to voting control of a majority of the shares of SAL.

38.     Poznanski admitted that he did not report this purported insider transfer of all or substantially all of SAL's assets in the U.S. to the Board of Directors of SAL, nor did he seek approval from the Board of Directors of SAL.  In fact, Poznanski has never properly reported this alleged transaction to the shareholders, bondholders, or the SAL Administrators.  Before and at the meeting, SAL Administrator Gissin and his counsel have repeatedly demanded that Poznanski produce any and all documentation reflecting and concerning this alleged transaction, but he has produced nothing.

39.     At the time of this alleged transfer of assets, Poznanski was a director and alleged controlling shareholder of SAL, but SAL was insolvent and was not paying its creditors. Furthermore, under Israeli Companies Law 1999, any transaction involving the interest of an officer, director, or controlling shareholder must be approved by the controlling committee of the Board of Directors of SAL, which includes independent directors, by the Board of Directors of SAL with the interested parties not voting, and by a general meeting of the shareholders of SAL, with approval by 50% of the shareholders without the interested shareholders voting, all of which must take place after full disclosure of all the relevant facts.

40.     To the extent that Poznanski actually engaged in this alleged transfer, Poznanski failed to comply with applicable Israeli law and fiduciary duties to SAL and to the U.S. Entities.

41.     Upon information and belief, without the knowledge or consent of the SAL Administrators or the District Court, Tel Aviv, Poznanski has offered or is preparing to offer to

sell the remaining interests of SOVA Management (32% plus 17%) for approximately $3.3 million.

**B.**  **Poznanski's Mismanagement Leads to the Collapse of SAL.**

42.    As of April 10, 2008, Poznanski and another separate entity, Almond Investments Luxembourg S.A.R.L. ("**Almond Investments**"), directly and indirectly owned 70% of the issued and outstanding shares of SAL.

43.    From June 2008, to March 2009, SAL repurchased NIS 24 million of the Bonds, after which there existed only NIS 26 million of outstanding Bonds.

44.    Beginning in or about January 2010, SAL defaulted in making interest and other payments owed to its bondholders.

45.    On or about February 11, 2010, as a consequence of such defaults, the Trustee filed a petition in the District Court, Jerusalem, Israel, seeking to liquidate SAL.

46.    On or about August 18, 2010, SAL and the Trustee reached an agreement to reschedule SAL's payment of interest and principal on the Bonds ("**August 18, 2010, Debt Settlement**").

47.    On or about August 31, 2010, a committee of bondholders of SAL approved the August 18, 2010, Debt Settlement, and the petition for liquidation was then withdrawn.

48.    Pursuant to the August 18, 2010, Debt Settlement, Almond Investments became the majority shareholder of SAL, but Poznanski remained a minority shareholder of SAL and the sole officer of SAL in the United States, and he controlled management of the U.S. Entities.  He served as Chief Executive Officer of SAL until January 1, 2011, and still serves as a director.

49.    Originally, the free cash flow generated from the U.S. Entities was used to cover the operations and expenses of SAL and to make interest payments on the Bonds pursuant to the

2152450.2

August 18, 2010, Debt Settlement.

50.     Almond Investments began to loan money to SOVA Merritt to fund its activities. Almond Investments also loaned money to Poznanski.

51.     In December 2011, as a result of Poznanski's failure to repay Almond Investments on these loans, Poznanski transferred 4,000,000 shares of SAL to Almond Investments resulting in Almond Investment owning 29.6% of SAL's stock, and further reducing Poznanski's minority percentage of ownership to less than 10%.  The balance of shares was owned by the public.

52.     On or about December 25, 2011, Almond Investment exercised contractual rights to terminate Poznanski's controlling position in SAL, but Poznanski remained a minority shareholder of SAL and continued to control SAL's activities in the United States including the U.S. Entities.

53.     Upon information and belief, in January 2012, Poznanski began to divert assets of U.S. Entities, SOVA Merritt and SOVA Management, without consent of the Board of Directors of SAL.  Poznanski's actions significantly disrupted the flow of funds to SAL.  SAL was unable to file the required reports with the Israeli Stock Exchange (required by Israeli laws) and unable to fulfill required financial obligations.

54.     On February 23, 2012, SAL demanded that Poznanski cooperate by providing information, including the location of funds over which he had control.  On February 27, 2012, Poznanski refused SAL's request and improperly demanded that SAL first pay him money that he claimed he was owed.

55.     On February 28, 2012, SAL again requested information regarding the balance of monies that Poznanski had failed to transfer to SAL's account in accordance with his obligations.

56.     On or about March 22, 2012, the SAL Board of Directors removed Poznanski as

13

manager and revoked Poznanski's authority to act alone on behalf of SOVA Merritt, SOVA

Merritt Holdings, SOVA Holdings, SOVA Management, and SOVA Assets LLC.  In addition,

the SAL Board installed four new managers (Sarah Craimer, John (Yehuda) Feinberg, Yehuda

Berzon, and Daniel Turetsky).

## C.    <u>Litigation With Poznanski</u>

### 1.    <u>SOVA Merritt Seeks Information from Poznanski in New York Litigation</u>.

57.    On or about March 26, 2012, members of SOVA Merritt, on its behalf, filed

*SOVA Merritt LLC v. Poznanski and Wells Fargo Bank, Nat. Ass.* (Sup. Court, New York

County, Civil Action 650917/12) (the "**SOVA Merritt Action**"), seeking damages and a

permanent injunction (i) enjoining Poznanski from taking further action on behalf of SOVA

Merritt, (ii) mandating Poznanski to return funds he had transferred without authorization from

SOVA Merritt, and (iii) ordering Poznanski to produce SOVA Merritt's books and records.

58.    On April 5, 2012, the New York Court denied SOVA Merritt's request for an

injunction against Poznanski and Wells Fargo and ordered the parties to consider alternative

dispute resolution in Israel pursuant to a potential arbitration agreement between parties.

59.    On September 12, 2012, following the New York Court's April 5, 2012, decision

in the SOVA Merritt Action, Poznanski filed suit against SAL in the District Court, Tel Aviv,

seeking to appoint an arbitrator concerning the dispute involved in the SOVA Merritt Action.

(32154-09-12) ("**Poznanski Israel Action**").

60.    On November 20, 2012, the New York Supreme Court stayed the SOVA Merritt

Action, pending a ruling in the Poznanski Israel Action.

61.    On March 17, 2013, the District Court in the Poznanski Israel Action denied

Poznanski's request for arbitration between him and SAL, finding there was no arbitration clause

between them.

    **2.**      **SAL Seeks Information from Poznanski in Israeli.**

    62.      On or about May 5, 2012, SAL filed suit against Poznanski in the District Court, Tel Aviv. *Sovereign Assets Ltd. v. Poznanski* (Case No. 34740-05-12) (the "**Tel Aviv Action**").

    63.      In addition to this ongoing litigation, on May 8, 2012, SAL again requested information, including all bank papers from Wells Fargo and Bank Leumi. While Poznanski responded, his response failed to include the requested information, noting much of which was "not his responsibility."

    64.      On or about June 17, 2012, the District Court in the Tel Aviv Action issued an injunction against Poznanski ("**First Israeli Injunction**"), granting SAL's request for (i) access to SAL's information and documents; (ii) access to bank accounts in the United States; and (iii) Poznanski's transfer back of monies to an original bank account, which monies Poznanski had deposited in a new account opened by him without approval of the SAL Board. In the Tel Aviv Action, the Court noted that Poznanski had admitted to both carrying out a lease transaction concerning the Nashville Property and opening a company bank account without the required approval of the SAL Board. A certified copy of the First Israeli Injunction is attached hereto as Exhibit 7 and incorporated herein by reference. A sworn translation of the First Israeli Injunction into English is attached hereto as Exhibit 8 and is incorporated herein by reference.

    65.      Notwithstanding the District Court's order in the Tel Aviv Action, Poznanski failed to comply with the First Israeli Injunction.

    66.      On July 8, 2012, July 11, 2012, July 18, 2012, and again on July 20, 2012, SAL also requested the passwords to the United States bank accounts set up by Poznanski, but Poznanski failed to comply with these requests.

    67.      On or about July 25, 2012, SAL filed another motion in the Tel Aviv Action for relief against Poznanski for his abuse of court [contempt] for disobeying the First Israeli Injunction ("**First Contempt Motion**"). Poznanski opposed the First Contempt Motion.

2152450.2

68.    On or about September 9, 2012, the District Court in the Tel Aviv Action issued an order stating "[i]t seems that [Poznanski] is not showing that he is overly motivated to comply with the provision of the Court's order on various pretexts, and could have done much more than shuffling his feet." ("**Second Israeli Order**").  The Second Israeli Order provided that within seven days Poznanski must immediately provide relevant bank information for the new account opened without SAL Board approval.  A certified copy of the Second Israeli Order is attached hereto as Exhibit 9 and incorporated herein by reference.  A sworn translation of the Second Israeli Order into English is attached hereto as Exhibit 10 and is incorporated herein by reference.

69.    Following the Second Israeli Order, on November 13, 2012, SAL continued to demand that Poznanski provide up-to-date information on all of SAL' business, documents, funds, and transfer control of Debtor's Assets and activities to the Board.  Poznanski continued to refuse.

70.    By July 2013, Poznanski had still refused to comply with the Second Israeli Order, and SAL was forced once again to seek judicial intervention.  On July 27, 2013, SAL filed a second motion in the Tel Aviv Action for relief against Poznanaski for his abuse of court [contempt] for failure to comply with the Second Israeli Order.  ("**Second Contempt Motion**").  Poznanski opposed the Second Contempt Motion.

71.    On October 15, 2013, the District Court in the Tel Aviv Action issued an order requiring Poznanski to provide the requested information to SAL within 20 days. ("**Third Israeli Order**").  A certified copy of the Third Israeli Order is attached hereto as Exhibit 11 and incorporated herein by reference.  A sworn translation of the Third Israeli Order into English is attached hereto as Exhibit 12 and is incorporated herein by reference.

72.    Following the Third Israeli Order, Poznanski provided information, but failed to

include much of the relevant and current information requested.

73.     SAL, through its attorneys, and now through the SAL Administrators, has

continued to request access to information, documents, and bank accounts that are critical to the

business and management of SAL and the U.S. Entities.  Poznanski consistently answers these

requests with incomplete information.

**D.     SAL's Liquidation**

74.     While SAL and its subsidiaries continued to pursue actions in New York and Israel

to obtain the information necessary to fulfill SAL's financial obligations, Poznanski continued to

obstruct their efforts.

75.     As a result, on June 26, 2012, SAL gave notice that it was unable to make its first

payment of principal due June 30, 2012.

76.     On November 28, 2012, Almond Investments sold its share of SAL to A.A.

Marketing & Commerce Modiin Ilit Ltd. ("**A.A. Marketing**")

77.     On November 29, 2012, two of SAL's directors resigned.

78.     Throughout the next year, the business of SAL continued to decline and on

February 27, 2014, the bondholders met and approved a resolution to request dissolution of SAL

and the appointment of liquidators.

79.     On March 5, 2014, SAL issued a report confirming the financial status of SAL and

that it was unable to service its current obligations.

80.     Thus, on March 17, 2014, the Trustee and bondholder Edwin Cohen filed a

petition (the "**Liquidation Petition**") with the District Court in the SAL Liquidation Proceeding

seeking the liquidation of SAL.

81.     On March 24, 2014, the District Court, Tel Aviv, issued a provisional liquidation

2152450.2

order and appointed Adv. Guy Gissin and Adv. Rami Kogan as provisional liquidators of SAL. Pursuant to this order, the provisional liquidators obtained the power "to seize, safeguard, insure and insofar as necessary manage [SAL's] assets…"  Thereafter, in accordance with Israeli rules and regulations, notice of the Liquidation Petition was duly published and a certificate from the Registrar was produced according to Regulation 7 of the Israeli Companies Regulations (Dissolution) 5743-1987.  No one filed objections to the Liquidation Petition.

82.    On April 28, 2014, the District Court, Tel Aviv, granted the provisional liquidators' *ex parte* motion to require Poznanski to remain in Israel for questioning regarding SAL's business and assets.  On April 29, 2014, the provisional liquidators sent a request to Poznanski to attend an in-person interrogation on May 9, 2014, but the meeting did not occur because Poznanski's attorney stated his client was in New York.

83.    On July 7, 2014, the District Court, Tel Aviv, conducted a public hearing in the SAL Liquidation Proceeding.

84.    At the July 7, 2014 hearing, the District Court, Tel Aviv, issued the SAL Liquidation Order.

85.    In general, an Israeli liquidation proceeding is similar to a bankruptcy proceeding in the United States.  Pursuant to the SAL Liquidation Order, Israeli Companies Liquidation Regulations (1987), and the Israeli Companies Ordinance (consolidated Version ) 5743-1983 (which remain in effect pursuant to section 367 of the Israeli Companies Law 5799-1999) the SAL Administrators are granted the authority to manage SAL, seize any and all assets, and to investigate the circumstances regarding the collapse of SAL.    *See* http://financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/CorporateGovernance/5743-1983_Companies_Ordinance.pdf.

18

86.     Pursuant to the SAL Liquidation Order, the SAL Administrators took control from SAL's Board of Directors, and the Board lost all powers.  The SAL Administrators now have exclusive authority and act as the sole representatives of SAL.  In that capacity, the SAL Administrators are in charge of all the Debtor's businesses and assets, including but not limited to bank accounts, property, and exercising the equity rights in all subsidiaries.  Although the assets stay in the company's name, the SAL Administrators have the sole authority to make decisions concerning SAL.  Creditors are required to file their claims with the District Court supervising the liquidation.  The SAL Administrators are charged with collecting and liquidating all the Debtor's Assets, and resolving and paying all claims of creditors pursuant to the rules of the Israeli law.  The ownership in any subsidiary and any legal claims of SAL are considered to be an asset of the debtor.  *See, e.g.,* Companies Ordinance §§ 268, 269, 276, 305, 306, and 307.

87.     Upon commencement of the SAL Liquidation Proceeding, every transaction in the Debtor's assets, transfer of shares, or change of status of the Debtors is void unless the Court directs otherwise, and every attachment, execution and other process begun thereafter is void.  *Id* at §§268, 269.  Upon entry of the SAL Liquidation Order, no proceeding against the Debtor may be initiated or continued without the permission of the Court supervising the SAL Liquidation Proceeding.  *Id.* at §267.

88.     Pursuant to these powers, the SAL Administrators also have extensive authority to question under oath any party who may have relevant knowledge concerning SAL's business, particularly former directors, officers, employees, and obtain any and all documents and information necessary to effectuate the liquidation and investigation.  *Id.* at §288.

89.     The SAL Liquidation Order also refers to an "**Official Receiver**."  In Israel, in this context, the Official Receiver is a governmental authority responsible to supervise the work of

all court appointed administrators/receivers/liquidators, and its duty is to supervise the SAL Administrators' work and assist the Israel District Court.

90.    According to Israeli law, the SAL Liquidation Order starts the process of realizing SAL's Assets by the SAL Administrators and the distribution of proceeds to creditors according to priorities set by law.  Upon completion of realizing all of the company's assets and the rights of the company, the procedure of liquidation will be complete and the company will be deleted from the register of companies.

91.    On July 8, 2014, the SAL Administrators requested Poznanski (i) to appear before them for questioning, and (ii) to produce to them no later than 72 hours before the questioning:

> all the documents under his and/or anyone on his behalf's possession regarding the company [SAL] and its business. Including but not limited updated valuations made to both the company's assets, bank accounts related to their operation and their balance sheets, agreements made with third parties regarding those assets (including tenants, management companies, financing banks etc.) and including correspondence made between your client and those third parties.

92.    The SAL Administrators made this request pursuant to Sec. 18c of the Israel Bankruptcy Ordinance (1980) and Sec. 49 of the Israeli Companies Liquidation Regulations (1987), which create a mandatory duty on all directors, including Poznanski, to appear for questioning, because he was a director and officer and a necessary figure, who has crucial information regarding SAL, its subsidiaries, and the circumstances leading to its bankruptcy.

93.    Poznanski's attorney replied that Poznanski was out of the country and would not be able to attend on the date scheduled by the SAL Administrators.

94.    On July 22, 2014, SAL Administrator requested information from Wells Fargo Bank concerning the Connecticut Property and accounts of SOVA Merritt, because, at that time, it was believed to hold or service the mortgage on the Connecticut Property.  Wells Fargo did

20

not respond.

95.    On September 11, 2014, after SAL Administrators again requested a meeting with

Poznanski in Israel, Poznanski's attorney responded that Poznanski would not be in Israel but

suggested a video conference or written questions.  Poznanski, however, continued to refuse full

cooperation and transparency, as is required by Israeli law.

E.    **Other Legal Proceedings**

1.    ***Tawil, et al. v. Spitzer, Steinberg, E&S Development and Nashville Properties,
        LLC, Nashville Properties LLC, Abraham Poznanski, SOVA Management,
        LLC, Armand Lasky, 401 Church Street, LLC and John Does A through C***
        **(Supreme Court, New York County, Civil Action No. 652720/11 (the "<u>401
        Church Street Action</u>").**

96.    On or about October 4, 2011, the members of Nashville Properties, LLC

commenced in New York Supreme Court a civil action relating to the management and

membership interest of entities owning an interest in 401 Church Street, LLC, which owns the

Nashville Property.  This action directly impacts SAL's ownership interests in 401 Church Street

LLC.

97.    In the Second Amended Complaint, filed March 24, 2014, the plaintiffs claim,

among other things, that (i) plaintiffs owned interests in Nashville Properties, LLC; (ii) Nashville

Properties, LLC owned an interest in 401 Church Street, LLC; and (iii) Nashville Properties

LLC's interests in 401 Church Street LLC were fraudulently transferred to SOVA Management

LLC and Poznanski pursuant to the August 7, 2008 agreements discussed above, by which SOVA

Management gained 66% of Nashville Properties LLC's interest in 401 Church Street LLC.

98.    Among other things, the plaintiffs requested a declaration that they, not SOVA

Management and Poznanski, continued to hold and maintain Nashville Properties, LLC's

membership interests in 401 Church Street, LLC, because the previous managing members had

21

no authority to convey any membership interests to SOVA Management.

99.    On September 29, 2014, the Court denied the parties' cross-motions for summary judgment, on the grounds that there is a clear factual dispute concerning the transfer of membership interests to SOVA Management, and Nashville Properties, LLC's membership interests in 401 Church Street, LLC.

100.    This action is pending.  There is a status conference scheduled for November 5, 2014.

**2.    *Poznanski v. Turetsky and Cohen* (N.Y. Supreme, No. 652449/2013) ("Poznanski New York Action")**

101.    On or about July 12, 2013, on behalf of himself and related entities, Poznanski filed suit against SAL Directors Danny Turetsky, Edwin Cohen, and others for breach of contract, breach of fiduciary duty, breach of joint venture, etc. related to various business dealings between the parties.  Poznanski's complaint alleges that through a joint venture, allegedly formed between Poznanski, Turetsky, and Cohen (through Almond Investments), the parties entered into numerous agreements related to real estate investments in the U.S., to which he is entitled to compensation and damages for defendant's alleged actions.

102.    Poznanski's complaint also states at or about April through July 2010, "401 Church Street, LLC held a piece of real property in Nashville, Tennessee, and in which Sovereign Assets, Ltd. held a 66% interest."

103.    This case concerns Poznanski's alleged "joint venture" with SAL Directors, which directly or indirectly relates to the assets of SAL and the U.S. Entities, including but not limited to 401 Church Street LLC.

104.    This case is currently pending in New York Supreme Court.  The parties are in the discovery phase and scheduled for a status conference on November 5, 2014.

## THE NEED FOR RECOGNITION

105.   Based on information obtained in connection with the SAL Liquidation
Proceeding, and as set forth above, it appears that prior to the commencement of the SAL
Liquidation Proceeding, all of Debtor's Assets held in the United States were under the control
of Poznanski or others, who have repeatedly refused (i) to cooperate fully with the SAL
Administrators; (ii) to provide timely and complete information and documents concerning these
assets; and (iii) to relinquish control of these assets.

106.   As set forth above in paragraphs 36-41, in July 2013, Poznanski and others
purport to have taken self-dealing and secret actions that may have diminished the assets and
their value and have diverted that value to themselves by transferring the ownership of SOVA
Management and SOVA Merritt from SOVA Holdings, Inc. to themselves.   Upon information
and belief, Poznanski is preparing to take similar actions to sell or transfer for his own benefit the
remaining interests in or held by SOVA Management with respect to the Nashville Property,
which transactions are likely to be difficult or impossible to reverse.

107.   Finally, because of Poznanski's failure to cooperate with respect to SOVA
Merritt, and the refusal of the banks and servicing companies to provide information and
documents concerning the Connecticut Property, the ability of the SAL Administrators to
manage and protect that asset is severely threatened.

## THE NEED FOR DISCOVERY

108.   As part of the process of marshaling Debtor's Assets and paying SAL's debts, the
SAL Administrators need and seek to investigate the present status of Debtor's Assets and the
underlying real property and other accounts; to protect Debtor's Assets; and to pursue such

2152450.2

actions as are appropriate in order to recover and maximize the value for Debtor's Assets and/or seek damages from culpable parties.

109.   Petitioners have filed this Petition to commence this chapter 15 case in order to permit the SAL Administrators (i) to advance their investigation as part of the process of marshaling the assets of SAL, including the potential recovery of SAL assets that may be in the United States; and (ii) to advance potential prosecution of actions against parties in the United States and elsewhere.   Chapter 15 relief also will protect any proceeds recovered by the Petitioners in litigation brought in the United States and ensure that such proceeds are distributed in accordance with the SAL Liquidation Proceedings.   In order to pursue this investigation, Petitioners require and are entitled to an order permitting them to take discovery pursuant to Rule 2004, Fed. R. Bankr. P.

110.   Poznanski and other have refused to cooperate with the SAL Administrators and to provide them all the information and documents to which they are entitled, and which they require, and have requested.

**BASIS FOR RELIEF REQUESTED**

111.   Petitioners seek entry of an order of this Court granting the following relief:

(a)   Recognition of the SAL Administrators  as  "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code;

(b)   Recognition of the SAL Liquidation Proceeding as a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, or in the alternative, a foreign nonmain proceeding;

(c)   All relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code;

2152450.2

(d)    Authorizing the SAL Administrators to take discovery, pursuant to Bankruptcy Rule 2004, both prior to and after the hearing on the Petition.

(e)    Directing  immediately that Poznanski and any persons or institutions holding information or documents pertaining to SAL, its subsidiaries, and any of Debtor's Assets  provide such information to the SAL Administrators;

(f)    Pending the Hearing and thereafter, restraining Poznanski and any of his agents from taking any action on behalf of SAL or any of its subsidiaries or affecting Debtor's Assets; and

(g)    Such other and further relief as may be necessary or appropriate.

112.    Petitioners have satisfied the requirements for relief under sections 1517, 1520 and 1521 of the Bankruptcy Code.

113.    The SAL Liquidation Proceeding is a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code.  Israel was the center of SAL's main interests.  SAL was organized under the laws of Israel; its registered office and exclusive place of raising funds were located in Israel; its known creditors are in Israel;  SAL was managed, administered, operated and had banking arrangements in Israel; and its liquidation is currently being administered in Israel by the District Court, Tel Aviv, through its appointed SAL Administrators.

114.    The SAL Liquidation Proceeding is being conducted in accordance with the statutory provisions pertaining to the liquidation of a bankruptcy under the laws of Israel and subject to the jurisdiction of the District Court, Tel Aviv. Paragraph 6 above identifies two lawsuits involving subsidiaries of SAL in the United States.  The SAL Administrators are not aware of foreign proceedings with respect to SAL pending in any other jurisdiction.  This

25

statement satisfies the requirements of Section 1515(c) of the Bankruptcy Code.

115.    Petitioners are persons who are the authorized foreign representatives of the SAL Liquidation Proceeding within the meaning of section 101(24) of the Bankruptcy Code. The SAL Administrators are authorized to administer the liquidation of Debtor's Assets in accordance with the insolvency laws of Israel and to act as a representative of the SAL Liquidation Proceeding.

116.    The Petition meets the requirements of section 1515 of the Bankruptcy Code, because the SAL Administrators have commenced this chapter 15 case by filing with this Court the Petition, with a certified copy of the SAL Liquidation Order and an English translation thereof (Exhibits 4 and 5), the Statement required by section 1515(c) of the Bankruptcy Code in paragraph 114 above, and all other documents required under Chapter 15 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

117.    Recognizing the SAL Liquidation would not be manifestly contrary to the public policy of the United States under section 1506 of the Bankruptcy Code.  Entry of the Proposed Order would promote the policies underlying Chapter 15 of respecting and facilitating cross-border insolvency proceedings as set forth in sections 1501 and 1508 of the Bankruptcy Code.

## NOTICE

118.    Pursuant to section 1517(c) of the Bankruptcy Code, and Bankruptcy Rule 2002(q), a petition for recognition shall be decided at the "earliest possible time," with at least 21 days' notice by mail of the hearing.

119.    Bankruptcy Rule 2002 (q) provides for notice as follows:

> … debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all entities against whom provisional relief is being sought under § 1519 of the Code, all parties to litigation pending in the United States in which the debtor is a

party at the time of the filing of the petition, and such other entities as the court may direct …

120.    Accordingly, Petitioners request that this Court set the date for the hearing on recognition (the "**Hearing**") at the earliest time, and approve the order limiting notice, scheduling a hearing, and specifying the form and manner of service of notice and the form of notice ("**Notice**"), as set forth in form Exhibits 2 and 3.

121.    Any notice requirements specified in section 1514 of the Bankruptcy Code regarding notice to creditors for the Debtor should be waived due to the nature of the relief being sought and the expectation that no creditor will need to file any claim or appear in any matter before the Court.

122.    By such Notice, all parties in interest will be advised of the commencement of the chapter 15 case, the relief requested by the Petition, the central documents filed with the Court in this chapter 15 case, as well as the date, place and time of the Hearing to consider the Petition and the date, time and manner for lodging a response or other pleading in connection with the Petition and the relief requested therein, in accordance with the Bankruptcy Rules and the Local Rules of Bankruptcy Procedure.

## CONCLUSION

WHEREFORE, Petitioner respectfully requests that this Court (i) set the Hearing on the request for recognition at the earliest possible time; (ii) and immediately enter the Proposed Order Scheduling a Hearing on, and Specifying the Form and Manner of Service for Notice of, the Chapter 15 Petition, substantially in the formed annexed hereto as Exhibit 2; (iii) approve the Proposed Notice of Hearing for Recognition of Foreign Main Proceeding, substantially in the form annexed hereto as Exhibit 3; and (iv) at the Hearing approve the Proposed Order Granting Recognition of Foreign Main Proceeding, substantially in the form annexed hereto as Exhibit 1,

27

which grants the relief requested herein, including recognizing the proceedings relating to the

SAL Liquidation Proceeding as a "foreign main proceeding" under section 1517 of the

Bankruptcy Code, and such further relief as set forth in the Verified Petition and the Proposed

Order, and as otherwise may be just and proper.


Dated: New York, New York
October 31, 2014

                    GOLENBOCK EISEMAN ASSOR BELL
                     & PESKOE LLP
                    437 Madison Avenue, 35th Floor
                    New York, New York 10022
                    (212) 907-7300 – office
                    (212) 754-0777 – facsimile
                    mdevorkin@golenbock.com
                    mrosenberg@golenbock.com
                    econway@golenbock.com

                    By:   /s/ Michael Devorkin
                            Michael S. Devorkin, Esq.
                            Marc D. Rosenberg, Esq.

                    *Counsel for Petitioners*

28