Michael S. Devorkin, Esq.
Marc D. Rosenberg, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300

*Attorneys for Petitioners*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

In re:                                          :

                                                        Chapter 15
SOVEREIGN ASSETS LTD.,        :

                                                        Case No. 14-
        Debtor in Foreign Proceeding.     :

------------------------------------------------- x


### *EX PARTE* MOTION OF PETITIONERS FOREIGN REPRESENTATIVES SEEKING (1) PROVISIONAL RELIEF FOR A PRELIMINARY INJUNCTION AND (2) ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

Upon the Verified Petition ("**Verified Petition**") [1] Under chapter 15 Of The Bankruptcy Code For Recognition Of Foreign Representatives And Foreign Main Proceeding And For Additional Relief Pursuant to 11 U.S.C. § 1521, and the Declarations in support thereof filed contemporaneously therewith by Adv. Guy Gissin and Adv. Rami Kogan, solely in their capacity as Special Administrators ("**Petitioners**" or the "**SAL Administrators**") of Sovereign Assets Ltd. ("**SAL**" or the "**Debtor**"), appointed by the Israel District Court of Tel Aviv-Jaffa ("**Israeli District Court**"), and as duly authorized foreign representatives as defined by section 101(24) of title 11 of the United States Code (the "**Bankruptcy Code**"), by and through their undersigned United States counsel, the Petitioners respectfully submit this Motion (the

---

[1] Capitalized terms used but not defined in this section have the meanings ascribed to such terms below or in the Verified Petition.

"**Motion for Provisional Relief**") for (1) Provisional Relief For A Preliminary Injunction, and (2) Order to Show Cause and Temporary Restraining Order, pursuant to sections 105(a), 362(a), and 1519 of the Bankruptcy Code, and Rule 65 of the Federal Rules of Civil Procedure, made applicable hereto by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of the Proposed Orders attached hereto as Exhibit A and Exhibit B.

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (C.J. Preska), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2.      The Debtor's Assets in the United States are personal property consisting of ownership interests in United States entities organized in one or more states.  11 U.S.C. § 109.  The Debtor's subsidiaries own real property in Tennessee and Connecticut, and two of these subsidiaries, SOVA Merritt, LLC and SOVA Management, LLC, are currently parties in two different state court cases within the Southern District of New York: *Tawil v. Spitzer, SOVA Management, LLC, et al.*, No. 652720/2011, (Sup.Ct. N.Y. Cnty.) and *SOVA Merritt, LLC v. Poznanski and Wells Fargo,* No. 650917/2012, (Sup.Ct. N.Y. Cnty.).

3.      Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

4.      The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 1507, 1517, 1519, 1520, and 1521 of the Bankruptcy Code, and Bankruptcy Rule 7065.

## BACKGROUND

5.      The facts concerning SAL, the SAL Liquidation Proceeding in Israel and other litigation in New York, the United States assets of SAL and its subsidiaries, and the reasons

necessitating filing the SAL Liquidation Proceeding are set forth in the Verified Petition and are incorporated herein by reference.

6.      On March 17, 2014, faced with the financial challenges described in the Verified Petition, bondholder Edwin Cohen and Aurora Fidelity Trust Co. ("**Aurora**" or "**Trustee**"), acting as Indenture Trustee under a Deed of Trust dated May 16, 2007, for bondholders who had purchased bonds from SAL in Israel, filed a petition with the Israeli District Court (Case No. 31623-03-14) to order the liquidation of SAL (the "**SAL Liquidation Proceeding**").  (Verified Petition, ¶ 80).

7.      On March 24, 2014, the Israeli District Court issued a provisional liquidation order and appointed Adv. Guy Gissin and Adv. Rami Kogan as provisional liquidators of SAL. Pursuant to this order, the provisional liquidators obtained the power "to seize, safeguard, insure and insofar as necessary manage [SAL's] assets…"  Thereafter, in accordance with Israeli rules and regulations, notice of the Dissolution Petition was duly published and a certificate from the Registrar was produced according to Regulation 7 of the Israeli Companies Regulations (Dissolution) 5743-1987.  No objections to the Liquidation Petition were filed.  (Pet., ¶ 81).

8.      On April 28, 2014, the Israeli District Court granted the provisional liquidators' *ex parte* motion to require Poznanski to remain in Israel for questioning regarding SAL's business and assets.  On April 29, 2014, the provisional liquidators sent a request to Poznanski to attend an in-person interrogation on May 9, 2014, but the meeting did not occur because Poznanski's attorney stated his client was in New York. (Pet., ¶ 82).

9.      On July 7, 2014, the Israeli District Court issued an order appointing petitioners Adv. Guy Gissin and Adv. Rami Kogan as Special Administrators for the purpose of liquidating SAL, pursuant to the Israeli Companies Law, 5759-1999 and the

Israeli Companies Ordinance (New Version) 5743-1983.  A certified copy of the Order

entered by the District Court Tel Aviv-Jaffa with respect to SAL (the "**SAL  Liquidation**

**Order**"), and a sworn translation thereof, are attached to the Verified Petition as Exhibits 4

and 5, and are incorporated herein by reference.  The SAL Liquidation Order included a

Dissolution Order for SAL. (Pet., ¶¶ 1, 83-84).

10.    As set forth in the Verified Petition, ¶¶ 84-89, under Israeli Companies

Ordinance, the SAL Administrators are vested with the authority to manage SAL, seize any and

all assets, and to investigate the circumstances regarding the collapse of SAL.  Pursuant to the

SAL Liquidation Order, the SAL Administrators took control from SAL's Board of Directors,

and the Board lost all powers.  The SAL Administrators now have exclusive authority and act as

the sole representatives of SAL.  In that capacity, the SAL Administrators are in charge of all the

Debtor's businesses and assets, including but not limited to bank accounts, property, and

exercising the equity rights in all subsidiaries.  Although the assets stay in the company's name,

the SAL Administrators have the sole authority to make decisions concerning SAL.  The SAL

Administrators are charged with collecting and liquidating all the Debtor's Assets, and resolving

and paying all claims of creditors pursuant to the rules of the Israeli law.  The ownership in any

subsidiary and any legal claims are considered to be an asset of the debtor.  *See, e.g.,* Companies

Ordinance §§ 268, 269, 276, 305, 306, and 307.

http://financeisrael.mof.gov.il/FinanceIsrael/Docs/En/legislation/CorporateGovernance/5743-

1983_Companies_Ordinance.pdf.

11.    Upon commencement of the SAL Liquidation Proceeding, every transaction in

the Debtor's assets, transfer of shares, or change of status of the Debtors is void unless the Israeli

Court directed otherwise, and every attachment, execution and other process begun thereafter is

void. *Id.* at §§268, 269.  As used herein, the Debtor's assets include all subsidiary entities

("**Debtor's Assets**" **or** "**SAL's Assets**").   Upon entry of the SAL Liquidation Order, no

proceeding against the Debtor may be initiated or continued without the permission of the Court

supervising the SAL Liquidation Proceeding. (Pet., ¶ 87).

12.     Pursuant to these powers, the SAL Administrators also have extensive authority to

question under oath any party who may have relevant knowledge concerning SAL's business,

particularly former directors, officers, employees, and obtain any and all documents and

information necessary to effectuate the liquidation and investigation. (Pet., ¶ 88).

13.     The SAL Liquidation Order also refers to an "**Official Receiver**."   In Israel, in

this context, the Official Receiver is a governmental authority responsible to supervise the work

of all court's appointed administrators/receivers/liquidators, and its duty is to supervise the SAL

Administrators' work and assist the Israel District Court. (Pet., ¶ 89).

## RELIEF REQUESTED

14.     By this Motion for Provisional Relief, the SAL Administrators respectfully

request that pursuant to sections 105(a), 362(a), and 1519 of the Bankruptcy Code, and

Bankruptcy Rule 7065, this Court enter the Proposed Orders attached as Exhibit A and Exhibit B

hereto, which include:

(i)     an *ex parte* Order to Show Cause with a Temporary Restraining Order and

other relief in the form attached hereto as Exhibit A to protect SAL and SAL's Assets pending

this Court's entry of an order recognizing under chapter 15 the SAL Liquidation Proceeding as a

"foreign main proceeding" and recognizing the SAL Administrators as duly authorized "foreign

representatives"; and

(ii)     after a hearing on the Motion for Provisional Relief, a Preliminary

Injunction substantially in the form attached hereto as Exhibit B, ordering the application of

sections 361 and 362 of the Bankruptcy Code to the instant chapter 15 case, and other relief to

protect SAL and SAL's Assets, pending this Court's entry of an order recognizing under chapter

15 the SAL Liquidation Proceeding as a "foreign main proceeding" and recognizing the SAL

Administrators as duly authorized "foreign representatives."

15.     The provisions in proposed Order to Show Cause with Temporary Restraining

Order and in the proposed Preliminary Injunction include:

(a)     ordering that the protections of sections 361 and 362 of the Bankruptcy
        Code apply to this chapter 15 case and to SAL and SAL's Assets in the
        United States;

(b)     establishing Adv. Guy Gissin and Adv. Rami Kogan as the representatives
        of SAL with full authority to administer SAL's Assets and affairs in the
        United States, including, without limitation, making payments on account
        of SAL's prepetition and postpetition obligations;

(c)     entrusting the administration and realization of all of SAL's Assets in the
        United States to the SAL Administrators, including all of SAL's Assets
        located in the United States or which may have been transferred to third
        parties in the United States;

(d)     enjoining all persons and entities from seizing, attaching, enforcing and/or
        executing liens or judgments against SAL's Assets in the United States or
        from transferring, encumbering or otherwise disposing of or interfering
        with SAL's Assets or agreements in the United States without the express
        consent of the SAL Administrators;

(e)     enjoining all persons and entities from commencing or continuing,

including the issuance or employment of process of, any judicial,

administrative or any other action or proceeding involving or against SAL

or SAL's Assets or proceeds thereof, or seeking to recover a claim or enforce

any judicial, quasi-judicial, regulatory, administrative or other judgment,

assessment, order, lien or arbitration award against SAL or SAL's Assets or

proceeds thereof; and

(f)     ordering that the SAL Administrators have the right and power to issue

subpoenas to examine witnesses and require the production of documents

and information concerning SAL's assets, affairs, rights, obligations or

liabilities.

16.     At this time, the SAL Administrators are not seeking to restrain the property-level

entity of the Tennessee Property or its lender, SOVA Merritt with respect to the Connecticut

Property, or the lenders with respect to the Connecticut Property, because Poznanski and others

have not provided complete documentation with respect thereto, and the SAL Administrators do

not want to inadvertently trigger a clause in those documents that would be adverse to the

Debtor's interests.

## **GROUNDS FOR RELIEF REQUESTED**

17.     The SAL Administrators submit that the circumstances in this case warrant

imposition of an immediate stay mirroring the relief that will ultimately be granted in favor of

the SAL Administrators upon recognition, and that the relief sought herein is necessary for an

economical, expeditious, and equitable administration of SAL's estate.

18.     The Bankruptcy Code provides for interim provisional relief, available upon the request of the foreign representative, where such relief is "urgently needed to protect the assets of the debtor or the interests of creditors," during the period between the filing of a chapter 15 petition and hearing on recognition. 11 U.S.C. § 1519(a).  As explained below, such immediate, interim relief is appropriate here.

19.     Specifically, SAL needs immediate, interim protection staying any activity against, and any attempt to transfer or affect, SAL and SAL's Assets in the United States to ensure that the SAL's Assets in the United States are not diminished or imperiled prior to the recognition of the SAL Liquidation Proceeding as a "foreign main proceeding" and of the SAL Administrators as the "foreign representatives" and the formal imposition of the automatic stay. Accordingly, the SAL Administrators respectfully requests immediate provisional relief from this Court pursuant to sections 105, 362 (a), and 1519(a) and (e) of the Bankruptcy Code and Bankruptcy Rule 7065.

I.     **Sections 105 and 1519 Provide for A Preliminary Injunction and a Temporary Restraining Order to Protect The Debtor's Assets.**

20.     Section 1519(a) of the Bankruptcy Code authorizes the Court to grant immediate relief to protect the value of, and stay execution against, the Debtor's assets, including by applying other provisions of the Bankruptcy Code such as the automatic stay pursuant to section 362.  Section 1519(a) specifically provides that *from the time a chapter 15 petition has been commenced* until such time as the court rules on recognition of the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including that set forth in Paragraph 15 and any relief referred to in paragraphs (3), (4), or (7) of Section 1521(a).

21.     Section 1519(e) of the Bankruptcy Code incorporates the standards, procedures, and limitations applicable to an injunction to interim relief requested under section 1519(a).

22.     Furthermore, immediate relief is appropriate pursuant to section 105(a) of the Bankruptcy Code, which authorizes the Court to "issue any order necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code assures "the bankruptcy courts' power to take whatever action is appropriate and necessary in aid of the exercise of their jurisdiction." *In re Casse*, 198 F.3d. 327, 336 (2d. Cir. 1999) (internal citations omitted).

23.     Courts in this District often have granted interim, provisional relief similar to the relief requested herein. *See, e.g., In re Cozumel Caribe, S.A. de C.V.,* Ch. 15 Case No. 10-13913 (MG) (Bankr. S.D.N.Y. July 21, 2010)*; In re Corporacion Durango S.A.B. de C. V.,* Ch. 15 Case No. 08-13911 (ALG) (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Namirei-Showa Co., Ltd.,* Ch. 15 Case No. 08-13256 (BRL) (Bankr. S.D.N.Y. Aug. 22, 2008); *In re BluePoint Re, Ltd.,* Ch. 15 Case No. 0813169 (REG) (Bankr. S.D.N.Y. Aug. 14, 2008); *In re CapCity Clothing, Inc.,* Ch. 15 Case No. 08-11540 (RDD) (Bankr. S.D.N.Y. April 28, 2008); *In re Baronet U.S.A., Inc.,* Ch. 15 Case No. 07-13821 (JMP) (Bankr. S.D.N.Y. Dec. 11, 2007); *In re Avanzit, S.A.,* Ch. 15 Case No. 07-13765 (SMB) (Bankr. S.D.N.Y. Dec. 6, 2007); *In re Basis Yield Alpha Fund (Master),* Ch. 15 Case No. 07-12762 (REG) (Bankr. S.D.N.Y. Aug. 29, 2007); *In re Afinsa Bienes Tangibles S.A.,* Ch. 15 Case No. 07-10675 (JMP) (Bankr. S.D.N.Y. March 20, 2007).

## II.     The Requirements For Injunctive Relief Are Satisfied.

24.     Section 1519(e) of the Bankruptcy Code applies the same standard, procedures, and limitations applicable to an injunction to relief granted pursuant to section 1519 of the Bankruptcy Code. *See 11 U.S.C. § 1519(e).* Normally, in the Second Circuit, a party seeking a

preliminary injunction pursuant to Bankruptcy Rule 7065 must show "(a) that it will suffer

irreparable harm in the absence of an injunction; and (b) either (i) likelihood of success on the

merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in movant's favor." *See, e.g., Zervos v.

Verizon N.Y., Inc.,* 253 F.3d 163, 172 (2d. Cir. 2001); *Adelphia Comm. Corp. v. The America

Channel LLC (In re Adelphia Comm. Corp),* 2006 Bankr. LEXIS 975, *12 (Bankr. S.D.N.Y.

June 5, 2606).  The SAL Administrators respectfully submit that they have met the conditions for

injunctive relief under Rule 7065 and otherwise.

      25.    As explained in the Verified Petition, ¶¶ 17, 22-23, 32-41, 56, and 106, (i)

all of SAL's Assets in the United States remain under the control of Poznanski, who has been

directed to refrain from acting without the Board's consent, and refrain from acting without the

consent of the SAL Administrators and the Court in the SAL Liquidation Proceeding; (ii) in July

2014, subsequent to the SAL Liquidation Order, Poznanski secretly restructured two of SAL's

key subsidiaries, one of which holds an interest in valuable real property in Tennessee; and (iii)

there is a significant threat that he will continue to secretly engage in further unauthorized insider

transactions.

      26.    Notwithstanding the directions to Poznanski and the provisions of Israeli

law, Poznanski has taken the following actions:

      (i)    refused all requests and demands prior to and after the SAL

            Liquidation Proceeding  to turn over all information and

            documents in his possession concerning SAL and SAL's Assets

            (Pet., ¶¶ 30, 38, 54-55, 57-61, 63, 65-73, 82, 91-93, 95);

(ii)     refused all requests and demands of SAL to cease and desist acting

without the authority of SAL's Board (Pet., ¶¶ 56-61, 64, 81);

(iii)    exercised control over distributions due from SAL's subsidiaries

without making any accounting of these or any other of his actions

(Pet., ¶ 30);

(iv)     continued to exercise control to this day over the defense of SOVA

Management, LLC as a defendant in an action pending in Supreme

Court, New York County, Civil Action No. 652720/11 (Pet., ¶¶ 96-

100);

(v)      In July 2014, after the SAL Liquidation Order, engaged in a

transaction to restructure SOVA Management, LLC's interest in

401 Church Street, LLC, which owns 401 Church Street,

Nashville, TN  (Pet., ¶¶ 32-35);

(vi)     claims that he caused the transfer all or substantially all of SAL's

interests in the U.S. Entities, which the SAL Administrators

contend was unauthorized and without disclosure and approval by

the shareholders and the Board of Directors. (Pet., ¶¶ 36-40); and

(vii)    is likely to continue negotiating another transaction to sell the

remaining interests of SOVA Management, LLC in 401 Church

Street, LLC. (Pet., ¶ 41).

27.     By engaging in this conduct and refusing to place at the immediate disposal of the

SAL Administrators the records, funds, and other SAL's Assets, Poznanski has injured, and

continues to substantially injure, SAL and its creditors.

28.     Given the significant amounts involved, and the fact that SAL and SAL's Assets are currently subject to the SAL Liquidation Proceeding, there exists a substantial likelihood that Poznanski and others will act in their own self-interest to affect and recover value from these and other interests in violation of Israeli law and the SAL Liquidation Order.

29.     Such actions will also impair the SAL Administrators' ability to perform their duties in the SAL Liquidation Proceeding, expend SAL's limited and valuable resources, and disrupt the SAL Liquidation Proceeding and chapter 15 case. Further, such efforts are likely to negatively affect the ability of the SAL Administrators to recover value for the SAL estate and make an equitable distribution of SAL's estate assets.

30.     Accordingly, the relief requested herein will allow the SAL Administrators to preserve its assets and focus on the orderly review of the estate so that all of its creditors receive an equitable distribution of estate assets.

### A.     **SAL Will Face Irreparable Harm Absent the Requested Relief.**

31.     SAL will face irreparable harm if this Court were not to grant the Temporary Restraining Order and Order to Show Cause requested herein.

32.      Courts have consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *See In re Lines*, 81 B.R. 267, 270 (Bank. S.D.N.Y. 1988).  Harm to an estate also exists where the orderly determination of claims and the fair distribution of assets are disrupted. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 714 (2d Cir. 1987); *In re MMG LLC,* 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (finding that the guiding principle of bankruptcy is equality of distribution and that irreparable harm exists whenever local creditors of the foreign debtor seek to collect on claims or obtain preferred positions to the detriment of other creditors).  The successful administration of SAL's estate requires that the claims of all creditors, including those

in the United States, be resolved in the SAL Liquidation Proceeding, and that all the assets

remain available and the value be maximized.

**B.    Success On The Merits Is Likely.**

33.    The SAL Administrators are likely to succeed on the merits in obtaining

recognition of the SAL Liquidation Proceeding as a "foreign main proceeding."  To establish a

likelihood of success on the merits, a debtor must show that "[it] would be entitled to relief under

the law on which the claims are based." *In re Uniflex, Inc.,* 319 B.R. 101, 104 (Bankr. D. Del.

2005).  Given the facts of this case, it is beyond dispute that (i) the SAL Liquidation Proceeding

is a "foreign main proceeding," (ii) the SAL Administrators are the "foreign representatives," and

(iii) Israel is the center of SAL's main interests.  All proper supporting documentation was filed

contemporaneously with the Verified Petition, and section 1516(b) of the Bankruptcy Code

allows the Court to presume the authenticity of such supporting documentation.

34.    Thus, there is a high likelihood that the Court will grant the recognition,  Upon

recognition, a stay against execution on SAL's Assets will automatically apply under section 362

of the Bankruptcy Code, as such provision is made applicable by section 1520(a)(1) of the

Bankruptcy Code.

35.    There can be no dispute that Poznanski has refused all reasonable requests and

demands for information and documents that SAL and now the SAL Administrators need to

protect SAL and perform their duties, and that this conduct immediately jeopardizes the

administration of the Debtor.  There also can be no dispute that Poznanski has secretly taken

actions after the SAL Liquidation Order to restructure interest of and affecting SAL and its

subsidiaries, and that his brazen conduct creates a significant risk of further misconduct.

36.    Furthermore and beyond Rule 7065, pursuant to 11 U.S.C. § 362(a)(3), the Court

may act to prevent any action that would adversely affect the assets of the Estate.  *In re*

*Prudential Lines, Inc.,* 928 F.2d 565 (2d Cir. 1991) (deciding the issue pursuant to § 362(a)(3)

though noting that the permanent injunction entered by the district court was also supported by

its equitable powers pursuant to § 105 in debtor's adversary proceeding).  In *In re Prudential*

*Lines*, the Second Circuit affirmed a permanent injunction against the parent of a bankrupt entity,

a non-debtor, prohibiting it from taking a worthless stock deduction with respect to its bankrupt

subsidiary.  *Id*. at 573-75.  The court determined that if the non-debtor took the deduction it

would "eliminate the value of the NOL carry forward" to the debtor entity, which it concluded

was property of the estate.  *Id*. at 574.  In other words, "where a non-debtor's action with respect

to an interest that is intertwined with that of a bankruptcy debtor would have the legal effect of

diminishing or eliminate property of the bankrupt estate, such action is barred by the automatic

stay." *Id*.; *see also Matter of Colonial Realty Co.,* 134 B.R. 1017 (Bankr. S.D.N.Y. 1991) *(aff'd*

*by* 980 F.2d 125 (2d Cir. 1992)) (enforcing automatic stay against non-debtor, FDIC, even

though the Petitioners had not filed an adversary proceeding).

     37.    The burden of proof to enforce 362(a) is also less than for obtaining a preliminary

injunction.  In *In re Golden Distrib.,* cited by *In re Phar-Mor*, the debtor brought an adversary

proceeding against several former employees that did not seek injunctive relief.  Rather, debtor's

adversary complaint alleged breach of contract, misconduct with the intent to harm the debtor,

and conversion on the basis of defendants' attempts to solicit debtor's clients in breach of their

non-compete agreements.  Rather than filing a separate adversary proceeding for injunctive relief

and filing a motion pursuant to Bankruptcy Rule 7065, the debtor instead brought a motion

against its former employees for violation of the automatic stay.  The court held that having

"elected to apply for enforcement of the statutory relief made available under the automatic stay,

as expressed in 11 U.S.C. § 362(a)(3)" the debtor did not need to establish the factors required

for the grant of a preliminary injunction under Fed. R. Civ. P. 65 (namely, lack of an adequate

remedy at law, or irreparable injury, or loss and a likelihood of success on the merits).  Instead,

the litigant must show that "property of the estate is implicated and that some entity of individual

is attempting to obtain possession or exercise control over such property of the estate." *In re*

*Golden Distrib., Ltd*., 122 B.R. at 19.  Although the court held against the debtor in *In re Golden*

*Distrib.,* this was because it was unable to establish that property of the estate was at issue.  Here,

the Petitioners properly seek to enforce the automatic stay pursuant to 11 U.S.C. § 362(a)(3) and

have established that Poznanski's actions are an attempt to possess or exercise control over

property of the estate.

### C.   Non-Moving Parties Are Not Likely To Be Harmed.

38.    The relief requested herein is no different than that which will be provided upon

recognition of the SAL Liquidation Proceeding as a foreign main proceeding.  The SAL

Administrators are simply requesting the provisional application of such relief, in order to

preserve the status quo prior to the Court's decision on recognition.  The maintenance of the

status quo will not create any undue hardship or burden to creditors or parties-in-interest, and any

burden or hardship that may be imposed is outweighed by the benefits of the relief requested.

39.    Moreover, the injunctive relief requested is consistent with relief already in place

in Israel.  Therefore, non-moving parties would not be harmed if the Court were to grant the

relief requested herein.

### D.   The Requested Relief Is Consistent With
### The Public Policy Of The United States.

40.    Approval of the relief requested is not manifestly opposed to the public policy of

the United States.  *See, e.g. In re S.N.C. Summersun et cie, et al.,* No. 06-10955 (Bankr. S.D.N.Y.

Aug. 10, 2006) (recognizing civil law proceeding in France and granting stay of U.S.

proceedings); *In re Industrieplanung Fischer Aktiengesellschaft,* No. 07-30662 (Bankr. M.D. Ala. June 19, 2007) (recognizing German civil law proceeding); *In re Daniele Dolino,* No. 02-17629 (Bankr. C.D. Cal. Jan. 25, 2008) (recognizing Italian civil law proceeding).  Indeed, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction," *Corn, eld v. Investors Overseas Services, Ltd.,* 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979), a policy that was embodied in the old section 304 of the Bankruptcy Code and continues in chapter 15 of the Bankruptcy Code.

41.     Enforcing Section 362 of the Bankruptcy Code and upholding the SAL Administrators' authority to administer Estate assets is essential to the efficacy and integrity of the liquidation system.  The Motion for Provisional Relief seeks to uphold these core principles, which is clearly in the public interest, because it ensures that relief will remain available to the great majority of debtors who comply with their duties.

### E.     The Requirements of For A Temporary Restraining Order Are Satisfied

42.     In addition to seeking provisional application of the stay and other relief pending this Court's recognition of the SAL Liquidation Proceeding as a "foreign main proceeding," the SAL Administrators also seek immediate entry of an order to show cause with a temporary restraining order to protect SAL and SAL's Assets prior to the hearing on the Motion for Provision Relief.

43.     Pursuant to Bankruptcy Rule 7065(b), in order to obtain an *ex parte* temporary restraining order, an applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." *TKR Cable v. Cable City Corp.,* 267 F.3d 196, 198 (3d Cir. 2001).

44.     As detailed above, there is irreparable injury.  SAL's Assets are substantially exposed to adverse action by Poznanski and others.  If SAL's Assets located in the United States

are left unprotected, Poznanski is free to act and creditors would be free to exercise remedies against such assets, frustrating SAL's reorganization efforts in the SAL Liquidation Proceeding and harming the value of the estate.  Indeed, using the SAL Liquidation Proceeding as pretext, creditors could seize SAL's Assets or take other adverse actions to SAL.

45.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

46.     In the Second Circuit, the standards for obtaining either a temporary restraining order are identical to the standards set forth above for a preliminary injunction.  *See AIM Int'l Trading, LLC v. Valcucine Spa*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002).  *See NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 223 (2d Cir. 1995); *see also, N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999).  Whether to issue injunctive relief is within the sound discretion of the court.  *See Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990).

47.     If the SAL Administrators are prevented from administering SAL's Assets, and assets are transferred to purchasers or otherwise, there may be no financial recourse.  Injunctive relief is thus appropriate.

48.     Poznanski is not disclosing anything to the SAL Administrators, but is engaging in transactions with SAL's Assets.  If he succeeds, the Estate will be deprived of these assets, and it may be impossible to recover the assets.  Such tactics also cause the Estate irreparable harm and prejudice creditors increasing the cost of administration of the Estate, and thus threatening to impair the value of Estate assets,

III.     **Discovery is Critically Necessary and Appropriate.**

49.     In accordance with their duties under the Israeli law and the SAL Liquidation Order, the SAL Administrators have commenced their investigation of the financial affairs of

SAL in order to (i) locate, preserve, recover, and protect SAL's Assets, including the value of subsidiaries in the United States, largely reflected in real properties and possible bank accounts, and accounts receivable, if any; and (ii) determine what, if any, claims the Debtor has against those responsible for its management, in order to make the Debtor whole and enhance the ability of the SAL Administrators to make a distribution to the Debtor's creditors.

50.      Since their appointment, the SAL Administrators have been acting intensively to investigate and study the company's business, assets, transactions and ongoing management and operation. They have met with current and former controlling shareholders, but have not been able to obtain sufficient information and records concerning SAL's operations and SAL's Assets, or for the most recent periods, records of filings with the relevant tax authorities.  Nor do they have adequate records of Board meeting minutes or the customary book-keeping records, such as journals and ledgers.  Their attempts to gain control over SAL's Assets in the United States and to gain information from Poznanski (in his capacity as a director of the company) and from its representative in the United States, have failed, largely due to Poznanaski's lack of cooperation.

51.    The SAL Administrators also made written requests to (i) all the banking corporations in Israel requesting information regarding the company's bank accounts (if any exist), and (ii) the public the tax authorities for information; and to (ii) the controlling shareholders, but there has been a negative response.

52.    The SAL Administrators also made specific requests to Wells Fargo and Bank Leumi-New York, two banks in the United States with whom SAL and/or its subsidiaries appear to have had financial dealings, but neither has provided the requested information.

53.    The SAL Administrators also sought information from former officeholders of the company with subpoenas for investigation in front of the SAL Administrators. The officeholders

include Mr. Tzvi Gross, the former CFO; Mr. Amit Stern, the company's former CEO in the

United States, but these individuals asserted that they do not have any documents.  The SAL

Administrators have made further inquiries to former employees of SAL, who reported they had

few documents.

54.     The SAL Administrators are making inquiries to others former officers or

employees, but today these have not yet produced significant information.

55.     As a result, the SAL Administrators obtained very few documents concerning the

affairs of the Debtor.  It appears from the investigation to date, that Poznanski operated the U.S.

Entities largely as a one-person operation; few people reported to him; and records were not

maintained in the normal course that a public company follows.

56.     In order to pursue this investigation, the SAL Administrators require information

from witnesses and documents that are not in their possession.  The important witnesses with

information relating to the Debtor and its assets may include but are not limited to (i) any

officers, managers, directors, employees, and agents of the Debtor; (ii) internal and external

attorneys, accountants, and financial advisers for the Debtor; (iii) banks and bankers; (iv)

mortgagees and mortgage servicers relating to mortgages on real properties in the United States;

(v) other owners of any of the Debtor's subsidiaries; (vi) owners of the Debtor, and its parent and

subsidiaries; (vii) contractors that provided goods or services to or on behalf of the Debtor or its

subsidiaries, particularly with respect to manage of the real properties in the United Sates; (vii)

transferees of the Debtor's assets; and (vii) employees, agents, or professional financial or legal

advisors to any of the foregoing.

57.     In order to pursue their investigation, the SAL Administrators require documents

relating or referring to the Debtor that are not in his possession or control, including, but not

limited to, correspondence; original books of accounts, financial and accounting records;

analysis of, work performed by, and communications with the Debtor and any professional

advisors to or vendors for, the Debtor; records relating to customers, suppliers, subcontractors

and subcontractors of subcontractors; tax returns; records of bank accounts or any other assets or

claims of the Debtors; and records of transactions between and among the Debtor and its

officers, directors, employees and shareholders; and records of board meetings (collectively, the

"**Documents**").

58.     It may also be necessary for the SAL Administrators to obtain information from

those individuals and entities and to obtain and examine the Documents they have with respect to

the Debtor.  The SAL Administrators need to be able to continue their investigation by issuing

subpoenas to depose them and to obtain the Documents relevant to their testimony.  In each case,

if the SAL Administrators issue a subpoena, the Deponent will retain the right to move to quash

the subpoena on any appropriate grounds.

59.     Relief is necessary upon the filing of the Petition and prior to the hearing on the

Petition, because the SAL Administrators have no ability to protect the assets owned directly or

indirectly by the Debtor without immediately obtaining the aforementioned missing information

about the Debtor and these assets.  As set forth in paragraphs 25-30 above, the SAL

Administrators have obtained information that Poznanski has taken additional action that affects

and may dilute the value of the Debtor's interest in subsidiaries or asset that they own, and he

presents an ongoing threat to take similar actions with respect to such assets.  In order to protect

the Debtor's interest it is imperative that the SAL Administrators be able to immediately

ascertain the status of all subsidiaries and properties owned thereby.

60.    The SAL Administrators seeks entry of an immediate order that authorizes them to issue subpoena pursuant to Bankruptcy Rule 2004, which provides that on motion of any party in interest, any Court may order the examination of any person.  Section 1521(a)(4) authorizes discovery.  Bankruptcy Rule 2004(b) permits an inquiry ranging broadly over any "acts, conduct, or property [of the debtor] or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ."  Bankruptcy Rule 2004(b); *see, e.g., In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved.'") (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)); In *re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (scope of a Bankruptcy Rule 2004 examination is "broad and unfettered"); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) (same); *see also, In re ECAM Pubs., Inc.*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991) ("[T]he scope of Rule 2004 examination is so broad it can be in the nature of a 'fishing expedition.'") (quoting *Coffee Cupboard*, 109 B.R. at 514).

61.    Accordingly, Bankruptcy Rule 2004 empowers the Court to compel the production of documents and the attendance of an entity for examination.  The SAL Administrators' proposed request falls within the scope of Bankruptcy Rule 2004.

62.    No previous request for the provisional relief sought herein has been made to this Court.

## IV.    Request For Scheduling Of A Hearing For Preliminary Injunctive Relief

63.    The SAL Administrators respectfully request that this Court, by means of the proposed order to show cause, set a date for the hearing on its request for a preliminary injunction, as well as a date by which objections must be filed.

### MEMORANDUM OF LAW

64.     The SAL Administrators do not believe that the Motion for Provisional Relief presents any issues of law requiring the citation to any authority other than that cited above, however, the SAL Administrators reserve the right to file a memorandum of law to support of this Motion for (1) Provisional Relief For A Preliminary Injunction, and (2) Order to Show Cause and Temporary Restraining Order.

### NOTICE

65.     Once the Order to Show Cause is entered, the SAL Administrators should be required to provide notice of Motion for Provisional Relief, pursuant to Rules 1011(b) and 2002(q) of the Federal Rules of Bankruptcy Procedure upon (a) the Office of the United States Trustee; (b) parties or counsel of record for all parties against whom the SAL Administrators seek provisional relief pursuant to section 1519 of the Bankruptcy Code; (c) the debtor pursuant to Bankruptcy Rule 2002(q); and (d) all persons or bodies authorized to administer foreign proceedings of the debtor pursuant to Bankruptcy Rule 2002(q).

66.     Any notice requirements specified in Section 1514 of the Bankruptcy Code regarding notice to creditors for the Debtor are waived due to the nature of the relief being sought and the expectation that no creditor will need to file any claim or appear in any matter before the Court.

67.     Advance notice of the Motion for Provisional Relief and the temporary restraining order should not be given, because of the risk that Poznanski will continue to secretly harm SAL and SAL's Assets.

68.     The parties identified in Sections B and C of Exhibit C, attached hereto, are parties against whom SAL is seeking relief hereunder, and which have direct or indirect control over SAL's U.S. Assets, or which have asserted claims with respect thereto.

69.    In light of the relief requested, the SAL Administrators submit that such

notice and service constitutes reasonable and proper notice under the circumstances and that no

further notice is necessary.

### WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C)

70.    Bankruptcy Rule 7065 expressly provides that "a temporary restraining

order or preliminary injunction may be issued on application of a debtor, trustee, or debtor-in-

possession without compliance with Rule 65(c)."  To the extent Rule 65 of the Federal Rules of

Civil Procedure applies, the SAL Administrators believe that the security requirements imposed

by Rule 65(c) are unwarranted under the circumstances and, accordingly, respectfully requests a

waiver of such requirements pursuant to Bankruptcy Rule 7065.

### CONCLUSION

WHEREFORE, the SAL Administrators respectfully request (a) immediately entry of an

order to show cause with a temporary restraining order, substantially in the form attached hereto

as Exhibit A; (b) after the hearing, entry of an order, substantially in the form attached hereto as

Exhibit B, granting a preliminary injunction order pending this Court's entry of an order

recognizing the SAL Liquidation Proceeding as a "foreign main proceeding" and the SAL

Administrators as foreign representatives;" (c) scheduling a hearing on the Motion for

Provisional Relief; and (d) such other and further relief as is just and proper.

Dated: October 31, 2014
New York, New York

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 907-7300 – office
(212) 754-0777 – facsimile
mdevorkin@golenbock.com
mrosenberg@golenbock.com
econway@golenbock.com

By:    /s/ Michael Devorkin
         Michael S. Devorkin, Esq.
         Marc D. Rosenberg, Esq.

*Counsel for Petitioners*